IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:23-cr-304-RAH-JTA |
| | ) | |
| DOMINIC CLARK COBB | ) | (WO) |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the court on Defendant Dominic Clark Cobb's Motion to Suppress. (Doc. No. 16.) Cobb challenges the warrantless search of a fanny pack he had on his person when law enforcement initiated his arrest. After due consideration of the parties' arguments, evidence and applicable law, the undersigned concludes that the motion to suppress is due to be DENIED.

## I.   PROCEDURAL HISTORY

A federal grand jury returned a one-count indictment against Cobb on September 12, 2023, charging him with possession of a firearm by a convicted person, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1.) Cobb entered a plea of not guilty during his arraignment. (Doc. No. 13.)

Cobb filed his motion to suppress evidence on November 8, 2023. (Doc. No. 16.) The Government filed a response to the motion (Doc. No. 22), and Cobb filed a reply (Doc. No. 27). Because Cobb failed to address an argument raised by the Government in his reply, the undersigned ordered Cobb to file a supplemental reply and he did so. (Docs. No. 28, 29.) The undersigned conducted an evidentiary hearing on the motion on November

30, 2023. (Doc. No. 33, Transcript of Evidentiary Hearing.) Hence, the motion is ripe for review.

## II.   FINDINGS OF FACT[1]

During the evidentiary hearing, the court heard testimony from David Gamper and Josh Walton, two law enforcement officers with the Lee County Sheriff's Office ("LCSO").[2] (Doc. No. 33, Tr.) The testimony and evidence adduced at the hearing establish the following facts.[3]

On July 15, 2021, a resident in Salem, Alabama, reported mistreatment of dogs at a residence to the LCSO. Walton reported to the scene and observed the dogs at the residence. Walton spoke to the complainant and other neighbors and one of the neighbors contacted the owner of the dogs.[4] The dog owner arrived shortly wearing a face mask.[5] Walton communicated with the dog owner, requested and received a Georgia identification from the dog owner, took a report and departed the scene. The name on the identification provided by the dog owner was Jakarence Lamar Pickett.[6]

---

[1] The undersigned reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citation omitted).

[2] Gamper has been employed with the LCSO for over ten years. (Doc. No. 33, Tr. at 4.) He was a corporal and K-9 handler in the Patrol Division during the relevant time. (*Id*. at 4-5.) Walton has been employed with the LCSO for over five years and was a deputy sheriff in the Patrol Division at the relevant time. (*Id*. at 43.)

[3] The undersigned finds the testimony of both witnesses to be credible.

[4] (Def. Ex. 1.)

[5] Walton testified that the dog owner never removed his face mask. (Doc. No. 33, Tr. at 44.)

[6] (Def. Ex. 1; Doc. No. 33, Tr. at 44.)

The following day, on July 16, 2021, the LCSO received another animal cruelty complaint for the same residence. Both Gamper and Walton responded to the complaint.[7] Gamper made contact with the complainant and other neighbors. After observing the poor health of one of the dogs,[8] Gamper notified animal control. While awaiting the arrival of animal control, Gamper continued to speak to the neighbors.

The dog owner arrived on the scene accompanied by other persons. He was wearing a t-shirt, shorts and a black fanny pack around his waist.[9] According to Walton, the dog owner was not wearing a face mask.[10] Gamper informed the dog owner of the animal complaint and that animal control had been contacted to remove the dogs. Walton asked the dog owner for his identification. The dog owner provided the same Georgia

---

[7] Both Gamper and Walton testified confusingly that each of them arrived first to the scene. (Doc. No. 33, Tr. at 6, 45.) Notably, however, Walton's dash camera recording shows that a LCSO K-9 vehicle was parked at the scene when he arrived which supports Gamper's testimony that Gamper was the first officer to the scene. (Gov. Ex. 2 at 00:21-00:41; Doc. No. 33, Tr. at 53.) The undersigned notes this minor discrepancy because otherwise the dash camera footage is consistent with the testimony of Gamper and Walton.

[8] Gamper observed more dogs on the back porch of the residence at issue. (Doc. No. 33, Tr. at 7.) The dogs "were tangled up, emaciated, and also wasn't able to get to water and had no food." (*Id.*)

[9] The dog owner had the zippered pouch of the fanny pack on the front of him. (Doc. No. 33, Tr. at 9, 47.)

[10] (Doc. No. 33, Tr. at 45; Def. Ex. 2.)

identification for Pickett.[11] According to Gamper and Walton, the identification contained the name, physical characteristics and photograph of another person.[12]

At some point, Gamper and Walton returned to communicate with the complainant. The complainant informed Gamper that the dog owner was moving into the neighborhood, showed Gamper her cell phone and stated that the name of the dog owner was "Dominic Clark Cobb."[13]

Gamper and Walton then confronted Cobb outside his residence about his age and identity and Cobb ultimately revealed his true identity.[14] Gamper at that time directed Cobb to turn around and place his hands behind his back.[15] Cobb removed the fanny pack from his waist and attempted to provide it to his girlfriend. Gamper grabbed the fanny pack and Walton placed his hands on Cobb to arrest him.[16] Cobb jerked away from Walton[17] and

---

[11] On the audio from Gamper's dash camera recording, Walton states that the dog owner provided to him the same identification that was presented on the previous day. (Gov. Ex. 1 at 46:27-47:00.)

[12] Both Gamper and Walton testified that the information and photograph on the Georgia identification did not match Cobb. (Doc. No. 33, Tr. at 8, 45.)

[13] (Gov. Ex. 1 at 45:56-45:57.)

[14] Walton confirmed Cobb's identity by referring to him as "Mr. Cobb" and asking him about his other dogs. (Doc. No. 33, Tr. at 46.) Cobb immediately answered. (*Id.* at 12, 46.) This testimony is consistent with Walton's dash camera recording. (Gov. Ex. 2 at 40:49-40:58.) Cobb later admitted that he was "lying" and revealed his true identity. (Gov. Ex. 2 at 42:00-42:06; Doc. No. 33, Tr. at 9, 46.)

[15] Gamper testified that he commanded Cobb to place his hands behind his back because Gamper was going to arrest Cobb for providing false information. (Doc. No. 33, Tr. at 10.)

[16] (Doc. No. 33, Tr. at 47, 50.)

[17] (Doc. No. 33, Tr. at 47.)

fled on foot.[18] Gamper and Walton immediately pursued Cobb. After fleeing for about 20 yards, Cobb's shoes fell off causing him to fall.[19] Gamper tased him and Cobb was taken into custody.[20] After Cobb was placed in handcuffs, Gamper searched the fanny pack and discovered a firearm.[21] Walton charged Cobb with multiple state offenses, including using a false identity to obstruct justice and resisting arrest.[22]

According to Gamper, "[w]ithout manipulating [the fanny pack], … [he felt] there was obviously something hard, similar to a shape of a firearm in it." (Doc. No. 33, Tr. at 10.) Gamper testified that he held the fanny pack during his foot pursuit of Cobb because he had no knowledge of what was inside, did not know "if there was a weapon inside [] [and] didn't want anybody else to be able to obtain that." (Doc. No. 33, Tr. at 11.) Similarly, Walton testified that he attempted to stop or give orders to Cobb when Cobb removed the fanny pack[23] because "if someone has already lied to us two days in a row and he's trying to hide something … we don't know what's in that fanny pack, so it's an officer safety issue at that point." (Doc. No. 33, Tr. at 52.)

---

[18] (Doc. No. 33, Tr. at 47.)

[19] (Doc. No. 33, Tr. at 10, 47-48.)

[20] Walton suffered a shoulder injury from the struggle with Cobb. (Doc. No. 33, Tr. at 20, 50.)

[21] (Doc. No. 33, Tr. at 11.) Walton also testified that immediately after he handcuffed Cobb on the ground, Gamper "looked into the fanny pack and noticed there was a loaded gun in there." (Doc. No. 33, Tr. at 48.) Gamper was only a few feet away from Cobb at that point. (*Id.*)

[22] (Def. Ex. 2.)

[23] Walton testified that when Cobb removed his fanny pack and attempted to hand it to his girlfriend, Walton told him, "No, it's on you." (Doc. No. 33, Tr. at 54.) Walton's dash camera recording is consistent with this testimony. (Gov. Ex. 2 at 42:12-42:14.)

### III. DISCUSSION

Cobb argues the warrantless search of the fanny pack was not a proper search incident to arrest because the fanny pack was not a part of his person when the arrest occurred. (Doc. No. 16 at 5-6.) Presuming his first argument is adopted by the court, Cobb also argues the search was not a proper search incident to arrest because he had no access to the fanny pack at the time of its search as he was handcuffed. (*Id*. at 6-7.)

The Government responds that the fanny pack search was a lawful search incident to arrest because Cobb was under arrest when he was told to place his hands behind his back and the fanny pack was still around his waist. (Doc. No. 22.) The Government also argues that Gamper had reasonable suspicion that a firearm was inside the fanny pack once he clutched it so the threat to officers' safety and potential for the destruction of evidence was apparent. (*Id*. at 2-3, 4.) The Government alternatively argues that the firearm would have been inevitably discovered.[24] (*Id*. at 5.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" occurs when an individual's possessory interest in certain property is meaningfully interfered with. *Id*. "Under what is known as the 'exclusionary rule,'

---

[24] In its brief, the Government argues that the fanny pack search was a valid inventory search. (Doc. No. 22 at 5.) At the hearing, the Government did not present any evidence to support its inventory search argument, so the Government withdrew it. (Doc. No. 33, Tr. at 67-68.)

evidence seized as a result of an illegal search may not be used by the government in a subsequent criminal prosecution." *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).[25]

The Supreme Court has emphasized that the touchstone of the Fourth Amendment is reasonableness, "measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). A warrantless search or seizure is presumptively unreasonable, unless an exception to the warrant requirement applies. *United States v. Berrong*, 712 F.2d 1370, 1372 (11th Cir. 1983). A search incident to arrest is one of those exceptions. *See United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."); *United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002) ("In fact, a full search incident to a lawful arrest is not only a 'reasonable' search under the Fourth Amendment, it is also an exception to the warrant requirement.") (citation omitted).

The search incident to arrest exception serves a significant purpose. "The purpose for a search incident to arrest is to find weapons that the suspect may use to injure police

---

[25] The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights" by prohibiting the use of illegally seized evidence in criminal prosecutions. *United States v. Calandra*, 414 U.S. 338, 348 (1974). The rule is designed to deter misconduct by law enforcement by banning evidence obtained in violation of the Fourth Amendment. *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) (citing *Nix v. Williams*, 467 U.S. 431, 442-43 (1984)). The exclusionary rule "has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Suppressing evidence under the exclusionary rule is an "extreme sanction." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citation omitted).

officers and to collect and preserve evidence." *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1222 (11th Cir. 1993). "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *Robinson*, 414 U.S. at 234. Thus, in a search incident to arrest, the search "may only include the arrestee's person and the area within his immediate control … the area from within which he might gain possession of a weapon or destructible evidence." *Arizona v. Gant*, 556 U.S. 332, 339 (2009). *See also United States v. Bennett*, 555 F.3d 962, 966 (11th Cir. 2009 ("Law enforcement agents are also permitted to search for weapons or evidence incident to a suspect's lawful arrest, though the scope of that search is limited to the grab area within the suspect's immediate reach.").

> In the Eleventh Circuit,
>
> these principles have been applied to containers that include backpacks and briefcases, *see United States v. Roper*, 681 F.2d 1354, 1357 (11th Cir. 1982), wallets, *see United States v. Watson*, 669 F.2d 1374, 1383–84 (11th Cir. 1982), and handbags, *see United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir. 2016). Indeed, the Eleventh Circuit has specifically applied the search incident to arrest doctrine where a gun is concealed in a backpack. *See, e.g., United States v. Jean*, 636 F. App'x 767, 769 (11th Cir. 2016).

*United States v. Mackie*, No. 23-CR-20204-RAR, 2023 WL 6552479, at *6 (S.D. Fla. Oct. 9, 2023). Notably, the Eleventh Circuit has "found that searches of wallets or bags on or near the arrestee are valid searches incident to arrest under a variety of factual circumstances." *United States v. Jean*, 636 F. App'x 767, 769 (11th Cir. 2016) (listing cases).

The undersigned finds that the search of Cobb's fanny pack was valid under the search incident to a lawful arrest exception and did not violate the Fourth Amendment.

First, considering the totality of the circumstances, the officers had probable cause to arrest Cobb for using a false identity to obstruct justice.[26] "[T]he Fourth Amendment permits warrantless arrests … where an officer has probable cause to believe that a felony has occurred." *Goddard*, 312 F.3d at 1362-63. "[T]o determine whether an officer had probable cause to arrest an individual, [the court must] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Under Alabama law, "a person commits the crime of obstructing justice using a false identity if he or she uses identification documents or identifying information of another person or a fictitious person to avoid summons, arrest, prosecution, or to impede a criminal investigation." Ala. Code § 13A-8-194(a). This crime is a felony. Ala. Code § 13A-8-194(b). Here, the undisputed evidence of record establishes that Cobb provided false identifying information to law enforcement on July 16, 2021, when he presented a Georgia identification to Walton that did not contain his personal information.[27] Cobb even admitted later that he had lied about his identity. These facts are sufficient for the

---

[26] (*See* Def. Ex. 2.)

[27] Cobb does not challenge his arrest by the officers nor dispute that he provided false information to them.

undersigned to conclude that law enforcement had probable cause to arrest Cobb for obstructing justice using a false identity.

Second, the undisputed evidence establishes that Cobb had the fanny pack on his person at the time law enforcement initiated the custodial arrest. Gamper and Walton both testified that Cobb had the fanny pack around his waist when Gamper directed Cobb to turn around and place his hands behind his back. The fact that Cobb removed the fanny pack from his person **during** the arrest does not diminish the lawful authority that law enforcement had to seize and search it. *See United States v. Ouedraogo*, 824 F. App'x 714, 720 (11th Cir. 2020) (noting that "even absent probable cause or suspicion of danger, police can routinely search individuals and personal items the individuals have on them when they are arrested and seize anything probative of proving criminal conduct"); *Goddard*, 312 F.3d at 1364 (noting "it was the fact of a custodial arrest which gave rise to the authority to search [defendant's pocket for drugs]"); *Mackie*, No. 23-CR-20204-RAR, 2023 WL 6552479, at *6 (finding law enforcement's removal and search of crossbody bag from defendant's person during arrest was lawful search incident to arrest).[28] The evidence of

---

[28] Cobb urges the court to adopt the reasoning of the Tenth Circuit in *United States v. Knapp*, 917 F.3d 1161, 1166 (10th Cir. 2019). (Doc. No. 16 at 5-6.) In *Knapp*, the Tenth Circuit held that "a carried purse does not qualify as of the person." 917 F.3d at 1166. Despite Cobb's urging, the undersigned is not persuaded that the Tenth Circuit's opinion in *Knapp* is applicable here as the evidence before the court indicates that the fanny pack was on Cobb's person – and not carried in his hand – when the officers initiated the arrest. In addition, the fanny pack was only removed from Cobb's person when **he** removed it, **he** tried to hand it to someone else, and **he** tried to flee from the officers during the arrest. To the extent the timing of the search is critical to the issue before the court, the evidence indicates Gamper searched the fanny pack immediately after Walton placed handcuffs on Cobb and Gamper was only a few feet away from Cobb when doing so because Gamper kept the fanny pack in his hand during his foot pursuit of Cobb. Simply put, Gamper was near Cobb when he searched the fanny pack immediately after Cobb was handcuffed thus the search was a lawful search incident to arrest. *See Jean*, 636 F. App'x at 769 ("Though

record reflects that Gamper felt a hard object similar to the shape of a firearm in the fanny packet once he obtained it from Cobb. Bearing in mind that the officers did not know what the fanny pack contained, they were in a yard where other persons were present (including Cobb's girlfriend), they initiated Cobb's arrest because Cobb provided false information to them, Cobb personally removed the fanny pack from his person absent any command from the officers, and Cobb fled on foot once Gamper intercepted Cobb's effort to hand the fanny pack to his girlfriend, the officers were justified in searching the fanny pack in order to prevent destruction of any evidence from Cobb's person and for their own safety.

---

Jean was not immediately able to gain possession of the gun once in handcuffs, the bag was found on his person when he was arrested."); *also United States v. Cherry*, No. 1:18-cr-503-SCJ, 2020 WL 1026712, at * 6 (N.D. Ga. 2020) (citing *Jean* to find that search of fanny pack on defendant's person was lawful search incident to arrest because pack "became dislodged after Defendant tried to fight the officers off [and] [a]fter Defendant was subdued, the pack lay only a few feet away"). The undersigned declines to apply case law beyond the Eleventh Circuit when clear Eleventh Circuit case law supports a conclusion that the search at issue was a lawful search incident to arrest. *See Jean*, 636 F. App'x 767, 769 (citing *United States v. Rosenthal,* 793 F.2d 1214, 1232 (11th Cir. 1986), *modified*, 801 F.2d 378 (11th Cir. 1986) (per curiam) (search of handbag); *United States v. Richardson,* 764 F.2d 1514, 1527 (11th Cir. 1985) (search of wallet); *United States v. Roper,* 681 F.2d 1354, 1357 (11th Cir. 1982) (search of briefcase and book bag)).

Accordingly, Cobb's arguments as to the fanny pack fail[29] and the search was a lawful search incident to arrest.[30]

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to suppress (Doc. No. 16) be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than January 22, 2024. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

---

[29] The undersigned would be remiss if the undersigned did not specifically address Cobb's challenge to Gamper's credibility. Cobb argues that Gamper's testimony that he felt a hard object which had a shape similar to a firearm in the fanny pack when he obtained it from Cobb before Cobb fled is not credible. (Doc. No. 29 at 3.) "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). In assessing the credibility of a witness, the court takes "into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand." *Id*. at 750. Unless the evidence " 'is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it" or unless the factfinder's determinations appear to be " 'unbelievable[,]' " a reviewing court should accept those findings of fact. *Ramirez-Chilel*, 289 F.3d at 749 (citations omitted); *accord United States v. Griffith*, 397 F. App'x 613, 617-18 (11th Cir. 2010). Having observed Gamper's testimony, the undersigned finds that his statement that he felt a hard object that had a shape similar to a firearm in the fanny pack is credible.

[30] Because the undersigned concludes that the search of Cobb's fanny pack was proper under the search incident to arrest exception, the undersigned does not reach the question of whether the search of the fanny pack was justified under the inevitable discovery doctrine.

Failure to file a written objection to the Magistrate Judge's findings and 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 8th day of January, 2024.

/s/ Jerusha J. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE